# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## NO. 2021 CJ 1339

STATE OF LOUISIANA
IN THE INTEREST OF M.G., E.G., S.G.

Judgment Rendered: **FEB 2 5 2022**

\* \* \* \* \*

Appealed from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
No. JC-0184-2019

The Honorable Scott Gardner, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| Jennifer Guillot Womble<br>Metairie, Louisiana | Attorney for Appellant,<br>M.G. (father) |
| Olivia A. Simoneaux<br>Covington, Louisiana | Attorney for Appellee,<br>M.F. (mother) |
| Betsy H. Smith<br>Mandeville, Louisiana | Attorney for Appellees,<br>M.G., E.G., and S.G. (children) |

\* \* \* \* \*

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

**WOLFE, J.,**

In this Child in Need of Care (CINC) case, the father appeals the trial court's judgment that returned the children to the joint custody of the father and the mother, designated the mother the domiciliary parent, and prohibited the father from having any contact with the oldest child. We affirm.

## FACTS

In August 2019, M.G. (born March 9, 2006), E.G. (born March 31, 2009), and S.G. (born June 25, 2015), were removed from the custody of their mother (M.F.) and father (M.G.),[1] and placed in state custody by instanter order after the Department of Children and Family Services (DCFS) received reports of neglect, inadequate supervision, and domestic violence in the home. DCFS's investigation revealed a history of domestic violence. The father had a criminal history that included arrests for offenses including aggravated assault with a firearm, felony stalking, criminal mischief, simple assault, domestic abuse battery, and second-degree kidnapping. DCFS also learned the father had been arrested in May 2019 for second degree rape of the mother and rearrested in July 2019 for violating a protective order obtained by the mother. The children had reportedly witnessed the parents' arguing and the father threatening the mother. M.G. called 911 on several occasions and suffered a panic attack during one of the calls. The mother reportedly encouraged M.G. to forgive her father, stating he would not "do it again." The children were placed in a certified foster home, and the father was ordered not to have any contact with them.

The District Attorney's office filed a CINC petition, alleging that the parents failed to provide a safe and stable home for the children, failed to adequately supervise the children, and placed the children in a situation beyond their ability with

---

[1] Since the father and oldest child have the same initials, we will refer to the parents as "the mother" and "the father."

2

which to cope. At the adjudication hearing, the trial court ordered that both parents undergo psychological evaluations and maintained the no-contact order between the father and the children. The children were adjudicated children in need of care and continued in the custody of the state in their foster home placement. The trial court approved a case plan that set forth actions required by the parents to achieve the plan goal of reunification.

In advance of the six-month review hearing scheduled for February 2020, DCFS requested a home study for possible placement of the children with the maternal grandmother, who lived in Florida. The Court Appointed Special Advocate (CASA) volunteer reported the children were doing well in their foster home placement; however, the foster parents had only agreed to provide short term care. The mother had relocated to Florida in November 2019; however, DCFS was concerned about placing the children with her at that time. The CASA volunteer related that M.G. said she wanted to live with her mother or grandmother in Florida and that she did not want to have any contact with her father. After the hearing, the trial court ordered that the children remain in state custody but allowed the parents to have supervised visits with the children, but only at the request of the children. The case plan goal remained reunification of the children with the parents.

In February 2020, the children were placed with their grandmother in Florida. Thereafter, the children had regular, twice-weekly supervised visits with their mother. The father had phone contact with E.G. and S.G., and visited with them in Florida during the Father's Day weekend; however, the father had no contact with M.G. per her wishes.

In August 2020, the father filed a motion to return the children to Louisiana and to his custody. He alleged that the mother recanted the rape allegations against him and the charges had been refused by the District Attorney's office. He maintained that he was compliant with DCFS's case plan and that it was in the best

interests of the children to return to Louisiana to be reunified with him as he could provide them a stable, consistent, and loving home environment. The motion was set for hearing on the date of the twelve-month review hearing, after which the trial court maintained the children in state custody, placed with their maternal grandmother, and approved an updated case plan with the continued goal of reunification.

In November 2020, the father filed another motion to return the children to Louisiana. He contested DCFS's placement of the children in Florida with their grandmother, contending placements in Louisiana were not explored and that DCFS's actions indicated favor toward the mother. He additionally alleged the DCFS case worker exchanged concerning text messages with E.G., encouraging her not to see her father and appearing to place the child in the middle of the conflict. The trial court refused to entertain the motion on an expedited basis and set it for hearing along with the eighteen-month review hearing. The father then filed exceptions of no cause of action and no right of action, as well as a request to transfer the matter to the district court's domestic division. The exceptions and request to transfer were denied.

In anticipation of the eighteen-month review hearing, DCFS represented that both parents had complied with the case plan and recommended that custody of the three children be returned to their parents, with the mother named the domiciliary parent. DCFS reported that the parents had addressed the issues that led to the children's removal and worked together regarding visitation. It was noted that the father traveled to Florida every other weekend to visit E.G. and S.G.; however, M.G. continued to refuse any contact with him. The CASA volunteer also recommended that custody be returned to the parents with the mother named the domiciliary parent. She specifically recommended that visits with the parents be at the children's discretion. She further noted that M.G. remained adamant that she did not want to

4

talk with or visit her father and that M.G. wanted to begin living with her mother before the start of the school year so she could attend the same high school all four years.

At the eighteen-month review hearing, the trial court heard testimony from the DCFS case worker, the DCFS foster care supervisor, the CASA volunteer, the mother, the father, each of the three children, and the father's expert in clinical psychology. It was undisputed that the parents complied with the DCFS case plan. The father asked that the court award him custody of the children and expressed concerns about the children living with the mother, as well as his frustration with DCFS during the course of this proceeding. In particular, the father was upset that he had had no contact with M.G. since the start of this proceeding. The father stated he requested reunification therapy with M.G., and the father's expert stated his opinion that the father would respond well to the therapy. However, M.G. testified she wanted no contact with her father and stated she would refuse to participate in reunification therapy. The DCFS case worker and foster care supervisor, as well as the CASA volunteer, recommended that the children be returned to the joint custody of their parents, with the mother designated the domiciliary parent, and the father allowed visitation if desired by the children.

Based on the evidence presented and after presiding over this matter for more than eighteen months, the trial court ordered that M.G., E.G., and S.G. be returned to the joint custody of their parents, with the mother designated the domiciliary parent. The trial court made additional orders, including that the father have no contact with M.G. and have visitation with E.G. and S.G. according to a visitation judgment. On July 23, 2021, the trial court signed a written judgment in accordance with its ruling and closed the case without further review, with the trial court

5

maintaining jurisdiction over the matter until the youngest child reaches the age of majority. The father now appeals.[2]

**DISCUSSION**

On appeal, the father contends the trial court erred in designating the mother the domiciliary parent. He argues this constituted a *de facto* removal of the child from Louisiana and imposed an undue burden on his exercise of joint custody.

The purpose of the CINC proceeding is to protect children whose physical or mental health and welfare is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of such complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts. La. Ch. Code art. 601. The interests of the parents must be balanced against those of the child, but the health, safety, and best interest of the child is the paramount concern in all CINC proceedings. See La. Ch. Code art. 601; **State in Interest of C.F.,** 2017-1054 (La. 12/6/17), 235 So.3d 1066, 1075.

A trial court's determination of a child's best interests is usually based heavily on factual findings. **Kott v. Kott,** 2020-0873 (La. App. 1st Cir. 4/16/21), 324 So.3d 165, 171. It is well settled that an appellate court cannot set aside a trial court's factual findings in the absence of manifest error or unless the findings are clearly wrong. **Rosell v. ESCO,** 549 So.2d 840, 844 (La. 1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced it would have weighed the evidence differently had it been the trier of fact. **Rosell,** 549 So.2d at 844. In order

---

[2] The father prematurely filed a motion for new trial before the written judgment was signed, which the trial court denied. See La. Ch. Code art. 332C. Thereafter, the father filed a second, albeit untimely, motion for new trial, which the trial court again denied. See La. Ch. Code art. 332C. This appeal was timely filed; therefore, the timeliness issues related to the motions for new trial are moot.

to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record clearly establishes that the fact finder is clearly wrong or manifestly erroneous. **Stobart v. State, Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). Since the trial court is in the best position to ascertain the best interests of the child given the unique set of circumstances involved, its custody determination is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. **Kott**, 324 So.3d at 171.

At the eighteen-month review hearing, the DCFS case worker, the DCFS foster care supervisor, and the CASA volunteer recommended that the children be returned to the joint custody of their parents, with the mother named the domiciliary parent. Each testified about their involvement with this case and explained that the children were now well-adjusted to living with their mother, happy, and doing well in school. Both the DCFS case worker and foster care supervisor testified the father complied with the case plan; however, both expressed reservations about his continued controlling behavior. The case worker stated the mother had exhibited protective capacities to ensure the children were safe and had been respectful of the children's wishes regarding visitation with their father. Based on her observations and discussion with the children throughout this proceeding, the CASA volunteer agreed with DCFS's recommendation that it would be in the best interest of the children to reside primarily with the mother and visit the father at their discretion.

All three children also testified at the hearing, with M.G. (then 15 years old) and E.G. (then 12 years old) stating their preference was to live primarily with their mother, and S.G. (then six years old) stating she wanted to spend time with both parents. M.G. expressed continued concern for the mother's safety, stating she overheard the father recently threaten the mother. E.G. described a loving

7

relationship with the father and stated she thought he was "doing better," but also expressed concern over the father's unpredictable anger.

During the hearing, the trial court also heard allegations that the father had been stalking the mother during the course of these proceedings and hired a private investigator to gather information on her. The father denied the allegations, explaining that the mother's car had been equipped with an OnStar safety and security system and that he had driven by the mother's home in Florida and hired a private investigator to see if the children were having unsupervised visits or living with the mother before they were placed in her home by DCFS. He further denied threatening the mother, stating, "There was never, there was no reason for to want to kill [the mother] or kill anybody. It's not my place to do anything like that."

After careful review, we find the record supports the trial court's determination that it is in the best interests of the children that the mother be designated the domiciliary parent.[3] On appeal, the father argues that allowing the children to live with the mother in Florida unduly burdens his relationship with his children. However, it is the best interests of the children involved that is the primary concern. See La. Ch. Code art. 601; **State in Interest of C.F.**, 235 So.3d at 1075. Considering the entire record, we cannot conclude the trial court abused its discretion in its custody determination.

The father next contends the trial court erred in denying his request for reunification therapy with M.G., denying him visitation with M.G., and ordering that he have no contact with M.G.[4] The father contends the trial court's judgment

---

[3]    No party has appealed the trial court's decision to return the three children to the joint custody of the mother and the father.

[4]    In making his argument, the father argues that the mother testified that M.G. wanted a relationship with her father and blamed M.G.'s testimony to the contrary on "teen and pre-teen issues." However, this is a misstatement of the record as the mother's testimony in that regard related to E.G. rather than M.G.

violates his fundamental right to have a relationship with his child and violates M.G.'s rights by terminating her relationship with her father.

The record establishes that M.G. participated in therapy during this proceeding and remained steadfast in her desire to have no contact with her father. The case worker testified that she spoke to M.G.'s therapist about the possibility of reunification therapy and, while the therapist thought it could be beneficial, the therapist believed it would not mend the relationship if M.G. was not open to the therapy. The case worker explained that she asked M.G. about reunification therapy and M.G. stated she did not want to see or speak with the father.

The record further indicates that during the course of this proceeding, M.G. was diagnosed with an anxiety disorder. DCFS's initial investigation indicated that M.G. suffered a panic attack while making a 911 call due to her parents' fighting, which required treatment by emergency responders. M.G. testified that she continued to suffer panic attacks during these proceedings, stating that she had a panic attack after testifying at an earlier hearing. M.G. stated that her counselor explained the concept of reunification therapy but did not recommend it, and M.G. candidly stated that if ordered she would refuse to participate. The DCFS case worker, foster care supervisor, and CASA volunteer all recommended that M.G.'s wishes in this regard be honored.

A parent has a constitutionally protected liberty interest in the companionship, care, custody, and management of his children. See **Cook v. Sullivan**, 2020-01471 (La. 9/30/21), 330 So.3d 152, 158. The United States Supreme Court has held that "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." **Troxel v. Granville**, 530 U.S. 57, 68-69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

9

While we are troubled by the trial court's decision to prohibit any contact between a child and a parent awarded joint custody of that child, we defer to the trial court's factual determination that this was in the best interest of the child. The trial court is in a superior position to assess M.G.'s maturity in expressing her wish and the detriment it could cause her to allow contact with her father. The record establishes that M.G. underwent individual counseling, and the trial court evidently found that the reunification therapy requested by the father would be a vain and useless act and would unduly upset M.G. Further, we note that the trial court did not terminate the father's parental rights; therefore, the trial court's restrictions on the father's ability to contact M.G. remain subject to further review under the appropriate circumstances. Thus, we will not disturb the trial court's custody ruling.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the father, M.G.

**AFFIRMED.**